U.S. Department of Justice

United States Attorney
*District of Maryland*

| | | |
|---|---|---|
| *Andrea L. Smith*<br>*Assistant United States Attorney*<br>*Andrea.Smith@usdoj.gov* | *Suite 400*<br>*36 S. Charles Street*<br>*Baltimore, MD 21201-3119* | *DIRECT: 410-209-4858*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-9293* |

November 14, 2014

Michael DeMartin, Esquire
200 E. Joppa Road
Suite 102
Towson, Maryland 21286

  Re: United States v. Melvin Truesdale
    Criminal No. GLR-13-0666.

Dear Mr. DeMartin:

  This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by December 10, 2014, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

  1.  The Defendant agrees to plead guilty to a one count Information to be filed, which charges him with Conspiracy to Distribute and Possess with the intent to Distribute controlled substances, in violation of 21 U.S.C. §846. The information will allege an amount of heroin, a schedule I controlled substance, in excess of one hundred grams. The Defendant will also waive the return of an Indictment. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

  2.  The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    1. THAT, on the dates alleged in the indictment, the Defendant did knowingly and unlawfully conspire with at least one other person;

    2. THAT, the purpose of the conspiracy was to distribute and possess with the intent to distribute controlled substances.

Revised 11/5/09

## Penalties

3.    The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: No more than 40 years and less than 5 years, five years of supervised release, and a maximum fine of $5,000,000. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4.    The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    (a)    If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    (b)    If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    (c)    If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

---

[1]    Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

(d) The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

(e) If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

(f) By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

(g) If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

(h) By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he/she is not a citizen of the United States, pleading guilty may have consequences with respect to his/her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he/she wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

3

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

The parties agree that the base offense level for the offense is **level 24**, pursuant to U.S.S.G. §2D1.1(c) (8), because the amount of heroin was more than 100 grams but less than 400 grams of heroin.

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. The resulting offense level is **level 21.**

7. The Defendant understands that there is no agreement as to his criminal history category and if he is determined to be a career offender as defined in U.S.S.G. §4B1.1, such a finding may affect the resulting offense level and advisory guidelines range.

8. This Office and the Defendant agree that with respect to the calculation of criminal history, the calculation of the advisory guidelines range and application of the 18 U.S.C. § 3553(a) factors, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines or in 18 U.S.C. § 3553(a) will be raised or are in dispute other than as set forth in paragraph 9 below.

### Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a sentence within the advisory guidelines range. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

## Waiver of Appeal

12.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a) The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b) The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds an offense **level of 21**; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below an offense **level of 21**.

c) Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d) The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

13.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful

behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

14. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

15. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Andrea L. Smith
Seema Mittal
Assistant United States Attorneys


I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

11/24/14                                              _____
Date                                                    Melvin Truesdale


I am Melvin Truesdale's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

11/24/14                                              _____
Date                                                    Michael DeMartin, Esquire

7

## ATTACHMENT A

### Statement of Facts in Support of Defendant's Guilty Plea

United States v. Melvin Truesdale, a/k/a "MJ"; GLR 13-0666

The undersigned parties stipulate and agree that if this case had proceeded to trial, the Government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial:

From at least 2003 to 2013, a group known as "Coppin Court" operated primarily in the part of the Cherry Hill neighborhood in Baltimore, Maryland, known as "Down the Hill," an area that is northeast of West Patapsco Avenue, southwest of Cherryhill Road, and northwest of Cherry Hill Park and that extends on the northwestern side approximately to Denham Circle and Bridgeview Road. This group, which consisted of NATHANIEL LIGHTFORD, a/k/a Taboo; DANNA FRASER, a/k/a Stroke; ROBERT SANDERS, a/k/a Man; ERNEST THOMAS, a/k/a EJ; and MELVIN TRUESDALE, a/k/a MJ," and others, did knowingly and willfully combine, conspire, confederate, and agree with each other and with others to distribute and possess with intent to distribute controlled substances to include cocaine, heroin, marijuana, and diverted pharmaceuticals. For a period of approximately 8 months, from June of 2011 until January of 2012, TRUESDALE sold heroin near the intersection of Bethune Road and Spelman Avenue, an area known as part of Coppin Court territory. For example, on August 10, 2011, after receiving a call for two males in the rear of the 900 block of Seagull with drugs on their person, officers observed two individuals in front of 817 Bethune Road who fit the description of the individuals alleged to have drugs on their person, and approached these individuals. TRUESDALE, who was sitting on the ground next to a bush, stood up, and heroin wrapped in clear twisted plastic fell from his pants leg. Under the bush that TRUESDALE had been sitting next to was a

1

medicine bottle with more heroin. A search of TRUESDALE's person resulted in the recovery of $289. In total, 98 gel caps containing a total of 11.23 grams of heroin were recovered.

The evidence would also show, and TRUESDALE would also admit that on June 18, 2013, a CCTV camera that monitors the 800 block of Bethune Road captured drug activity in that block. Specifically TRUESDALE was directing another male in drug sales. After several distributions, that male gave currency to TRUESDALE. TRUESDALE was then observed getting into a blue van being driven by Nathaniel Lightford.

Throughout the course of TRUESDALE's involvement in the Coppin Court drug conspiracy, it was reasonably foreseeable to TRUESDALE that the conspiracy involved at least 100 grams but less than 300 grams of heroin.

SO STIPULATED:

_____
Melvin Truesdale
Defendant

_____
Michael DeMartin, Esq.
Counsel for Defendant

_____
Andrea L. Smith
Seema Mittal
Assistant United States Attorneys

2